UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DENNIS LEE SHEFFIELD, | : CIVIL ACTION NO. 3:CV-07-2046 |
| Petitioner | : (Judge Nealon) |
| v. | : |
| PA. DEPT OF CORRECTIONS, et al., | : |
| Respondents | : |

## MEMORANDUM AND ORDER

Petitioner, Dennis Lee Sheffield ("Sheffield"), an inmate presently confined in the State Correctional Institution, Coal Township, Pennsylvania, filed the above captioned petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Sheffield challenges the denial of his parole by the Pennsylvania Board of Probation and Parole ("the Board"). Specifically, he claims that the Board's decisions violate the Ex Post Facto Clause of the federal Constitution because they applied statutory changes to the parole law, resulting in "substantially disadvantaging his chance of receiving a favorable recommendation for parole from the Department." (Doc. 1, petition). For the reasons that follow, the Court will deny the petition.

**Background**

Sheffield is currently serving an eighteen (18) to sixty-two (62) year sentence imposed by the Court of Common Pleas of Luzerne County, following pleas

1

FILED
SCRANTON
JAN 2 6 2009
PER _____
DEPUTY CLERK

of guilty to charges of Rape, Kidnaping, Involuntary Deviate Sexual Intercourse, and Aggravated Assault. (Doc. 21-2, Ex. A, Declaration of Benjamin A. Martinez, Att 1, Sentence Status Summary).

Sheffield was convicted of the above-mentioned offenses after he kidnapped, beat, and repeatedly raped a 13-year-old girl over a 3 ½ hour period – threatening the girl's life by repeatedly hitting, choking, and biting the victim, while also putting a knife to her throat. (Doc. 21-2, Ex. A, Declaration of Benjamin A. Martinez, at ¶ 22). After this incident, and after the victim was admitted to the hospital, doctors had to surgically remove a 6-inch dildo from the 13-year-old girl's rectum that Sheffield forced into her during his attack. Id. Sheffield committed this crime while he was on parole with the Board from a 1975 conviction for Rape and Involuntary Deviate Sexual Intercourse. Id. at ¶ 23. Sheffield was also previously convicted of Indecent Assault and Statutory Rape in 1974. Id.

Sheffield has been reviewed for parole by the Board twice and has been refused parole by decisions recorded on October 30, 2003 and March 29, 2005. Id. ¶ 24. After considering all matters required pursuant to the Parole Act of 1941, as amended, 61 P.S. § 331.1 et seq., he was initially refused parole on October 30, 2003. Id.

On March 29, 2005, Sheffield was again considered for and denied parole. See Sheffield v. Pa. Department of Corrections, 894 A.2d 836 (Pa. Cmwlth. Ct. 2006). The Board listed the following reasons for its most recent denial:

2

> 1. the recommendation made by the Department of Corrections ("DOC");
> 2. your prior history of parole supervision failure(s)
> 3. your unacceptable compliance with prescribed institutional programs;
> 4. your need to participate in and complete additional institutional programs; and
> 5. your interview with the Hearing Examiner and/or Board Member.

Id. The Board also informed Petitioner:

> You will be reviewed in or after October, 2008. At your next interview, the Board will review your file and consider: whether you have participated in a treatment program for sex offenders[;][w]hether you have received a favorable recommendation for parole from the Department of Corrections[;][and][w]hether you have maintained a clear conduct record and completed the Department of Corrections' prescriptive program(s).

Id.

Petitioner files the instant petition for writ of habeas corpus in which he challenges the Board's adverse decisions on its review of his parole. He raises the following four grounds for relief:

> 1. The D.O.C. has changed and/or altered the criteria it uses to determine its recommendation for or against parole and they have retroactively applied these changes and/or alterations to the Petitioner, substantially disadvantaging his chance of receiving a favorable recommendation for parole from the department.
>
> 2. Since 1990 the Pennsylvania Parole Laws, Policies, etc., have been changed and/or altered and these changes have been retroactively applied to the Petitioner, substantially

3

        decreasing Petitioner's possibility of being released on parole.

3.    The D.O.C. continues to deny the Petitioner a fair 'staffing' for a parole recommendation by using criteria that it did not previously consider in making a decision on whether or not to give a favorable recommendation for parole.

4.    The PBPP does not conduct full and fair interviews before deciding on whether or not to recommend for or against parole.

(Doc. 1, petition).

**Discussion**

    A.    **Ex Post Fact Claim**

In <u>Mickens-Thomas v. Vaughn</u>, 321 F.3d 374, 393 (3d Cir. 2003), the United States Court of Appeals for the Third Circuit addressed a habeas petition filed by a prisoner whose life sentence had been commuted to a term of years with parole eligibility. The petitioner claimed that he was entitled to review under the standards in place at the time of conviction, and that the Board could not give effect to the legislative change in policy reflected by the 1996 amendments. The Third Circuit, reasoning that "[a]n adverse change in one's prospects for release disadvantages a prisoner just as surely as an upward change in the minimum duration of sentence," <u>id</u>. at 392, held that retroactive application of changes in the parole laws that adversely impacted the likelihood of parole violated the ex post facto clause.

    The Third Circuit has since clarified its holding in <u>Mickens-Thomas</u>,

explaining that the retroactive application of the 1996 Amendments is not a *per se* violation of the Ex Post Facto Clause, but the inmate must also establish the second prong of the ex post facto analysis. Richardson v. Pennsylvania Bd. of Probation and Parole, 423 F.3d 282, 287-92 (3d Cir. 2005). Specifically, the inmate must show actual disadvantage by the retroactive application of the changed law. Id. "To violate the Ex Post Facto Clause, a retroactive change in the law or policy must create a 'sufficient risk of increasing the measure of punishment attached to the covered crimes'; 'a speculative and attenuated possibility of ... increasing the measure of punishment' is not enough." Id. at 288. The Third Circuit has "expressly rejected the contention that the retroactive application of the 1996 amendments is a per se violation of the Ex Post Facto Clause entitling the petitioner to automatic relief." Taylor v. Pennsylvania Bd. of Probation and Parole, 181 Fed. Appx. 253, 254 (3d Cir. 2006).

In Taylor, the Third Circuit held that an ex post facto violation was not shown merely by the fact that the Board had referred to the amended statute, explaining:

> The mere intuition that stricter standards are more likely to lead to an adverse result is insufficient. Rather, Taylor must provide such evidence as indications that he would have been a good candidate for parole under the old law, comparisons of parole rates for prisoners with similar convictions before and after the 1996 amendments, and the extent to which the reasons given for denying him parole would not have been considered before 1996.

5

Id. at 254-55.

In Shaffer v. Meyers, 163 Fed. Appx. 111 (3d Cir. 2006), the Third Circuit applied its holding in Richardson in a context very similar to that presented here. The petitioner had been convicted of a sexual assault in 1990. In denying him release on parole in 2004, the Board cited his failure to complete a sex offender program and the lack of a favorable recommendation from corrections officials. In affirming the rejection of the ex post facto claim, the Court of Appeals explained:

> With regard to the Ex Post Facto Clause, we emphasize that there are two prongs to a successful claim: Shaffer must show not only that there has been a change in law or policy which has been given retrospective effect but also that its retrospective application to him created a real risk of increasing the measure of his punishment. Richardson v. Pennsylvania Board of Prob. and Parole, 423 F.3d 282, 288 (3d Cir. 2005).
>
> In setting forth his claim, Shaffer reads Mickens-Thomas too broadly, at times appearing to interpret that decision as holding that any retroactive application of the amended parole statute violates the Ex Post Facto Clause. However, Mickens-Thomas prevailed because he clearly satisfied both prongs. In his case, the Board had relied solely on public safety in denying parole and disregarded the parole guidelines, the unanimous recommendations of the Department of Corrections, and evidence of his rehabilitation. Moreover, Mickens-Thomas had presented convincing evidence that he had a significant likelihood of parole under the pre-1996 guidelines and had shown that all prisoner's in his situation (prisoners whose life sentences had been commuted before 1996) had been subsequently paroled. As we noted in Richardson, 423 F.3d at 293, "Mickens-Thomas may be an exceptional case because of the compelling nature of the evidence of prejudice."

> Although we do not require a petitioner to provide evidence which is compelling to the same degree, "our precedents require that a petitioner proffer at least some evidence of disadvantage to warrant habeas relief." Id. Shaffer has not done so. Indeed, it is not even clear that he has met the first prong of the analysis, i.e., shown that the Board used new standards, retroactively applied, in denying him parole. *Prima facie* it does not seem likely that the criteria cited by the Board in Shaffer's case-participation in a treatment program for sex offenders, the recommendation of the Department of Corrections, Shaffer's conduct record and whether he completed any prescribed programs-would not have been considered by the Board pre-amendment, and Shaffer cites no evidence to persuade us otherwise. But even if we assume that the Board would have used different criteria pre-amendment, Shaffer has not provided adequate reasons to support the contention that application of those criteria would likely have resulted in his release on parole.

Id. at 113-14.

In Sheffield's case, the Board stated that it was denying parole based upon the DOC recommendation, assessments of his prior history of parole supervision failures, and his need to participate in and complete institutional programs. As in Shaffer, the factors cited by the Parole Board would appear to have been applicable at the time of Sheffield's criminal conduct, thus undermining any ex post facto claim. Participation in treatment programs, the DOC's recommendation, Sheffield's prior history of parole supervision, and interview with the Hearing Examiner and /or Board Member, are all factors rationally related to any parole decision, whether made before or after 1996.

Further, Sheffield presents no evidence supporting an inference that he

7

has been disadvantaged in some way by consideration of the 1996 amendments to Pennsylvania's parole law. With no support, he then arrives at the conclusion that he is now ineligible for parole simply because "the Pennsylvania parole laws, policies, etc. have been changed." (Doc. 1, petition). He thereafter contends that the use of the new guidelines makes him ineligible for parole. Id. He fails to offer any evidence that he was a good candidate for parole under the criteria in effect before 1996, and makes no statistical showing that inmates convicted of rape, statutory rape, and involuntary deviate sexual intercourse were more likely to be paroled before the 1996 change to the legislation. Because no suggestion of "individual disadvantage" has been presented in this case, he is not entitled to relief on his ex post facto claim. See Young v. Klem, et al., Civil Action No. 07-838, 2008 WL 583869, at *5 (M.D. Pa. March 3, 2008); Burkholder v. Wolfe, et al., Civil Action No. 03-0007, 2007 WL 90427, at *9-10 (M.D. Pa. Jan. 9, 2007).

    **B.**    **Due Process Claim**

It is well established that "[t]here is no constitutional right or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 7 (1979). While "States may under certain circumstances create liberty interests which are protected by the Due Process Clause," Sandin v. Conner, 515 U.S. 472, 483-84 (1995), the Pennsylvania Supreme Court has long held that the denial of parole does not implicate a constitutionally protected liberty interest because parole is a

discretionary matter, granted to a prisoner who has demonstrated the ability to function in society as a law-abiding citizen. Coady v. Vaughn, 564 Pa. 604, 770 A.2d 287 (Pa. 2001); Rogers v. Pa. Bd. of Prob. & Parole, 555 Pa. 285, 724 A.2d 319 (Pa. 1999). Thus, Sheffield has no right to parole.

In Morrissey, the United States Supreme Court addressed a habeas petition filed by a state inmate who alleged that he had not received due process during parole revocation procedures. The Court recognized that a federal court should not upset a decision of a state parole board unless the determination is based on constitutionally impermissible reasons such as race, religion or ethnicity or rendered in the absence of the following due process protections:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinder as to the evidence relied on and reasons for revoking parole.

Morrissey v. Brewer, 408 U.S. 471, 488-89 (1972).

Similarly, our Court of Appeals in Block v. Potter, 631 F.2d 233, 235 (3d Cir. 1980) ruled that a federal court's review of a state parole board decision is limited to an abuse of discretion inquiry. Specifically, relief is only available if: (1) an applicant was arbitrarily denied parole on the basis of impermissible reasons such as

race, religion, or political beliefs, and/or (2) the parole board failed to apply appropriate, rational criteria in reaching its determination. Id. at 236.

To the extent that Petitioner claims that he has a right to parole, he has no liberty interest in the anticipation of parole under any circumstances. In Sandin, 515 U.S. at 480-84, the Supreme Court held that a liberty interest is not created merely because a regulation limits the discretion of prison officials. Rather, courts should focus on the nature of the deprivation itself and the relevant inquiry is whether it was "the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." Id. at 486; see also Griffin v. Vaughn, 112 F.3d 703 (3d Cir. 1997). It has been repeatedly recognized that Pennsylvania state law does not confer its inmates with a legally protected interest in parole eligibility. Rodgers, 916 F. Supp. at 476-77; McCrery v. Mark, 823 F. Supp. 288, 294 (E.D. Pa. 1993). Thus, it is apparent that the denial of parole to a Pennsylvania state inmate is not the type of significant and atypical hardship contemplated by the Supreme Court in Sandin.

With respect to Petitioner's argument that the Board was unfair in "using criteria that it did not previously consider," the Board is required to consider:

> the nature and circumstances of the offense committed, any recommendations made by the trial judge and prosecuting attorney, the general character and background of the prisoner, [and]...the notes of testimony of the sentencing hearing, if any, together with such additional information regarding the nature and circumstances of the offense committed for which sentence was imposed as may be available. The board shall further cause the conduct of the person while in prison and his physical, mental and behavior

condition and history, his history of family violence and his complete criminal record, as far as the same may be known, to be reported and investigated. 61 P.S. § 331.19.

Sheffield's parole denial cited as reasons for the denial: (1) the recommendation by the DOC; (2) Sheffield's prior history of supervision failures; (3) Sheffield's unacceptable compliance with prescribed institutional programs; (4) Sheffield's need to participate in and complete additional institutional programs; and (5) Sheffield's interview with the Hearing Examiner and/or Board Member, as the reasons he was refused parole. (Doc. 21-2, Ex. A, Declaration of Benjamin A. Martinez, at ¶ 25, Att. 3, Notice of Board Decision). Additionally, the Board informed Petitioner what it would specifically consider at his next parole interview. Id. Thus, Sheffield has failed to allege facts from which it can be concluded that the Board acted in an arbitrary or capricious manner, or with vindictiveness, bias, or prejudice, when they denied him parole.

For the reasons set forth above, Sheffield is not entitled to habeas corpus relief. Moreover, it is evident that his claims do not merit a certificate of appealability. An appropriate Order follows.

DATED: January 26, 2009

United States District Judge

UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DENNIS LEE SHEFFIELD, | : CIVIL ACTION NO. 3:CV-07-2046 |
| Petitioner | : (Judge Nealon) |
| v. | : |
| PA. DEPT OF CORRECTIONS, et al., | : |
| Respondents | : |

### ORDER

**NOW, THIS 26th DAY OF JANUARY, 2009,** for the reasons set forth in the foregoing Memorandum, **IT IS HEREBY ORDERED THAT:**

1. The petition for writ of habeas corpus is **DENIED**.

2. The Clerk of Court is directed to **CLOSE** this case.

3. There is no basis for the issuance of a certificate of appealability.

_____
**United States District Judge**